Better Properties, Inc., Respondent, vs. Kocher and wife, Appellants.

*November 6—December 2, 1941.*

*Adolph G. Schwefel* of Milwaukee, for the appellants.

For the respondent there was a brief by *I. A. Dinerstein* and *Irving A. Lore,* both of Milwaukee, and oral argument by *Mr. Lore.*

FAIRCHILD, J.   The complaint charged defendants with fraud and misrepresentation in inducing plaintiff's acceptance of the certificate of stock at its face value.   The evidence did not show the existence of any fraud.   The complaint was not formally amended setting out a cause of action based on contract or mutual mistake, but the trial court submitted to the jury the two questions quoted above.   The testimony of the witnesses sustains the answers of the jury.   From the evidence it clearly appears that when plaintiff solicited the work its agents were told that the defendants had no ready cash and were not contemplating any improvement of their real estate. Plaintiff was told that all the money defendants had was "tied up."   The response of plaintiff was by way of a question as to why the money was not available.   There was an explanation of the situation as to the resources of the defendants.   Plaintiff's agent was told by Pauline Kocher that her husband was an old man, that he could not work any longer, and that all they had aside from assistance from a daughter was the home and the certificate of stock.   The certificate was exhibited to the plaintiff upon its request and taken by its agent who showed some familiarity with the association whose stock was represented by the certificate.

Pauline Kocher testified concerning the conversation with plaintiff's agent as follows : "He says he takes.   He says 'If you aint got no money—'   My money is tied up.   Where? I says 'In the Building & Loan.'   So I told him.   'What kind of Building & Loan ?'   I says 'Mutual, by Crowley, we took

them.' He says 'That is good Building & Loan.' We know that. 'We will take it. How much have you got?' I says 'All we have got that belongs to us is $1,125.' He says couldn't he see it? My daughter got it. This was on Friday, my daughter got it on Monday and on Tuesday morning he came to see it." There is further testimony that she showed the certificate to plaintiff's agent, that he read it over and took it with him, returning it later. When the work was finished the plaintiff accepted the certificate, credited the defendants with $1,125, and received from defendants $138 in cash. A receipt in full and waiver of lien were given. The testimony just referred to is not seriously in dispute and fairly discloses the negotiations between the parties. Therefore, the question as to how much could be raised by the immediate sale of this stock is not the determining question in this case. Although not readily convertible into cash, the certificate is shown by the evidence to be secured by valuable property. The plaintiff's acceptance of the certificate of stock with a face value of $1,125 and $138 in cash and acknowledgment of it as full payment for a debt of $1,263, manifested an intention to take $1,125 in building and loan stock. That brings this case within the rule of *Noonan v. Ilsley,* 17 Wis. *314.

The jury's determination set forth in its answer to the first question was an acceptance of the defendants' version of the contract. It says in effect that the certificate was to be accepted as payment or partial payment to the extent of its face value and not "to the extent of its then fair market value." That conclusion is consistent with and sustained by the finding under the second question that the parties were not "mutually mistaken as to the then market value of the stock." The trial court apparently was impressed with the idea that the defendants had received a valuable service from the plaintiff and that the stock was fairly worth $80 a share. He said : "Plaintiff is entitled to judgment against the defendants for the balance due upon the contract, to be limited, however, to

$900, this being amount computed on the basis of the stock at $80 per share."

We conclude that a jury question was presented. The rule is that where reasonable minds could differ on the evidence presented or on the inferences that could be drawn from that evidence, a jury question exists. There being credible evidence which in a reasonable view fairly supports or admits of the inferences drawn by the jury, its verdict should not have been upset. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 228 N. W. 741; *Gumm v. Koepke,* 227 Wis. 635, 638, 278 N. W. 447; *Jensen v. Jensen,* 228 Wis. 77, 81, 279 N. W. 628.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the answers of the jury to the questions of the special verdict and to enter judgment dismissing plaintiff's complaint.